IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

TERESSA MESTEK,

                              Plaintiff,                          OPINION AND ORDER

        v.                                                        21-cv-541-wmc

LAC COURTE OREILLES
COMMUNITY HEALTH CENTER,
LOUIS TAYLOR,
(in both his personal and official capacity)
JACQUELINE BAE, PH.D.,
(in both her personal and official capacity)
SHANNON STARR, M.D.,
(in both his personal and official capacity)
SARAH KLECAN,
(in both her personal and official capacity)
DAVID FRANZ,
(in both his personal and official capacity),
and MICHAEL POPP, in his personal capacity,

                              Defendants.

Plaintiff Teresa Mestek brings this action under the federal False Claims Act (FCA), 31 U.S.C. §3730(h), and Wisconsin common law, claiming that defendants wrongfully retaliated against her by terminating her employment at the Lac Courte Oreilles Community Health Center ("LCO-CHC") as a result of her efforts to prevent health care coding and billing fraud.  Before the court is defendants' motion to dismiss for lack of subject-matter jurisdiction and failure to state a claim upon which relief can be granted. Specifically, defendants argue that the FCA does not allow claims against an arm of a federally-recognized, Native American tribe like the LCO-CHC under the doctrine of sovereign immunity. For the reasons stated below, the court will grant defendants' motion to dismiss.

ALLEGATIONS OF FACT[1]

## A. The Parties

Defendant LCO-CHC is a health care clinic associated with the Lac Courte Oreilles Tribe Band of Lake Superior Chippewa Indians ("the Tribe").  While employed by the LCO-CHC, plaintiff Teresa Mestek served as its Director of Health Information.  At the time the complaint was filed, defendant Louis Taylor was the Chief Executive Officer of the Tribe and defendants Shannon Starr, Sarah Klecan, David Franz, and Jaqueline Bae were all LCO-CHC employees.  Finally, defendant Michael Popp was the owner and president of MJP Healthcare Consulting LLC, which worked with LCO-CHC to implement a new billing system.

## B. Defendants' Alleged Conduct

From 1994 to 2003, Mestek worked at LCO-CHC before moving to an unrelated hospital system.  In 2013, Mestek was rehired at LCO-CHC as the Director of Health Information, where she oversaw Health Information Management compliance and documentation standards.

In 2016, LCO-CHC purchased the rights to use "Intergy," an electronic health record software system developed and sold by Greenway Health, LLC.  LSO-CHC planned to implement the Intergy software to handle billing and coding starting in 2017, with Michael Popp, an independent consultant liaising with Greenway Health and using Intergy

---

[1] In resolving a motion to dismiss under Rule 12(b)(6), the court takes all the factual allegations in the amended complaint as true and draws all inferences in plaintiff's favor. *Killingsworth v. HSBC Bank Nevada*, 507 F.3d 614, 618 (7th Cir. 2007).

software system files from the Peter Christensen Health Center as a template for LCO-CHC's upcoming transition to Intergy.  However, the software files from Christensen Health allegedly contained outdated diagnostic codes, causing the new LCO-CHC Intergy system to contain incorrect codes and creating severe issues with client billing and documentation.[2]

As the Director of Health Information, Mestek worked with another coding consultant, James Walker, to attempt to fix these issues and bring them to the attention of LCO-CHC management, as well as train its healthcare providers on the new system. However, management was slow to respond to the resulting coding and billing errors found by Mestek and Walker.  Meanwhile, these errors posed ongoing risks to LCO-CHC's compliance with regulations for federally funded healthcare programs.  When Walker's contract was terminated by LCO-CHC in May of 2018, Popp was asked to assume Walker's coding responsibilities.  Around 2 months later, however, LCO-CHC received an audit report that had been authored by Walker in 2017, which noted serious flaws with the Intergy program and identified plaintiff Mestek's role in investigating those problems.

In July 2018, after LCO-CHC received Walker's report, Mestek was called to Medical Director Jacqueline Bae's office and asked if she was "loyal" to LCO-CHC, to which Mestek said, "yes."  Even so, Mestek continued to look for coding compliance issues in LCO-CHC documentation after that meeting.  On August 24, 2018, LCO-CHC

---

[2] Whatever the specific issues attributable to Christensen Health's Intergy software files, Greenway Health also entered into a February 2019 consent degree to pay $57.25 million to the United States under the FCA for allegedly "misrepresenting the capabilities" of another of its electronic health record software systems, which in turn caused users to submit false claims to the government.  *See* https://en.wikipedia.org/wiki/Greenway_Health (last visited May 15, 2022).

terminated Mestek's employment, which she appealed.    That appeal was denied by

defendant Bae, prompting Mestek to bring this action under the FCA's anti-retaliation

provision and Wisconsin common law.


OPINION

A motion to dismiss for failure to state a claim is designed to test the complaint's

legal sufficiency. *See* Fed. R. Civ. P. 12(b)(6).  The court must "constru[e] the complaint

in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged,

and drawing all possible inferences in [the plaintiff's] favor." *Hecker v. Deere & Co.*, 556

F.3d 575, 580 (7th Cir. 2009).  Dismissal is warranted only if no recourse could be granted

under any set of facts consistent with the allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).  To survive a motion to

dismiss, a plaintiff must allege sufficient facts to state a plausible claim for relief. *Spierer v.

Rossman*, 798 F.3d 502, 510 (7th Cir. 2015) (citing *Twombly,* 550 U.S. at 570).  "[W]hen

it is 'clear from the face of the complaint, and matters of which the court may take judicial

notice, that the plaintiff's claims are barred as a matter of law,' dismissal is appropriate."

*Parungao v. Cmty. Health Sys., Inc.*, 858 F.3d 452, 457 (7th Cir. 2017) (quoting *Conopco,

Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

Plaintiff advances two, basic arguments against dismissal:  (1) even if the Tribe itself

were directly implicated in this suit, sovereign immunity would not apply; and (2) if

sovereign immunity does apply to the Tribe, it does not extend to defendants LCO-CHC

and its employees or to defendant Popp as an independent contractor.   For the reasons

explained below, the LCO-CHC (and by extension its employees) is plainly an arm of the

4

Tribe for purposes of sovereign immunity, and this court has no further basis to exercise subject matter jurisdiction over the remainder of this lawsuit, including the claim against Popp for common law negligence.

## I.  The Tribe Has Sovereign Immunity

Defendants argue that plaintiff's FCA anti-retaliation claim is barred because the Tribe has not waived its sovereign immunity.  (Defs.' Br. (dkt. #22) 1.)  Plaintiff argues in response that defendants can be sued under the FCA's anti-retaliation provision, 31 U.S.C. § 3730(h), even if they cannot be sued as an arm of the Trive under the FCA's *qui tam* provision, 31 U.S.C. § 3729(a)(1)).  (Pl.'s Opp'n. (dkt. #25) 4.)  While the Seventh Circuit has not opined on this issue, the great weight of legal analysis from other federal courts dismisses the distinction plaintiff would draw here.  Moreover, the court finds these opinions to be well-reasoned and will follow them.

To begin, any "persons" who violate the FCA may be held liable under 31 U.S.C. § 3729(a)(1).  However, the Supreme Court has found that states, as sovereigns, are not "persons," and thus, cannot be sued under the FCA's *qui tam* provision.  *Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 781 (2000).  Other federal courts have since extended the reasoning in *Vermont* to federally recognized tribes, finding that they, too, as sovereigns, are not "persons." *E.g., United States ex rel. Cain v. Salish Kootenai Coll., Inc.*, 862 F.3d 939 (9th Cir. 2017); *U.S. v. Menominee Tribal Enterprises*, 601 F.Supp. 1061, 1068 (E.D. Wis. 2009).   As such, these tribes cannot be liable under 31 U.S.C. § 3729(a)(1) either.  *Id*.

The closer question is whether a federally recognized tribe can be held liable under

the FCA anti-retaliation provision, 31 U.S.C. § 3730(h), which does *not* limit liability to

"persons".  This is because other courts have found the distinction between the language

of these two statutory provisions important.  For instance, while the Eighth Circuit avoided

the question of whether a municipal entity is a "person" immune under 3729(a)(1), that

court held that an "employer" *could* be subject to the FCA anti-retaliation claim under §

3730(h), even if it were a "person."  *Wilkins v. St. Louis Hous. Auth.*, 314 F.3d 927, 928

(8th Cir. 2002).  Drawing on this same logic, plaintiff here suggests that even if a tribal

arm were not a "person," it is still liable under § 3730(h) due to the anti-retaliation

provision's broader scope.

In support of this argument, plaintiff turns to a decision of the D.C. Circuit Court

of Appeals in *Slack v. Wash. Metro. Area Transit Auth.*, 325 F.Supp.3d 146, 155 (D.D.C.

2018).  In *Slack*, the D.C. Circuit agreed with the plaintiff that "[u]nlike the text of the qui

tam provision, nothing in the text of the whistleblower provision at issue here limits

liability to legal persons."  325 F. Supp. 3d at 152–53.  However, plaintiff conveniently

fails to cite that circuit's *other* ruling in *Slack*, which went on to find that this distinction

was *not* sufficient alone to allow a suit against a sovereign's arm to move forward.  *Id*. at

153.  This holding in *Slack* relies in part on the Supreme Court's mandate that sovereign

immunity applies unless the relevant statutory language "evince[s] an unmistakably clear

intention to abrogate the States' constitutionally secured immunity from suit."  *Dellmuth

v. Muth*, 491 U.S. 223, 232 (1989).

Ultimately, therefore, the D.C. Circuit held that Congress would have to "clearly

declare its intent to abrogate the states' sovereign immunity when it passed the FCA" in

order to confer jurisdiction to the court. *Slack*, 325 F. Supp. 3d 146 at 153; *see also Monroe*

*v. Fort Valley State Univ.*, Civil Action 5:21-CV-89 (MTT) (M.D. Ga. Nov. 22, 2021)

(holding that despite plaintiff's persuasive legislative history and statutory interpretation

arguments, the FCA's anti-retaliation provision does not abrogate a state's sovereign

immunity because that provision lacked Congress's unequivocal intent to do so).  With no

evidence that Congress intended to remove sovereign immunity to a tribal arm under the

FCA's anti-retaliation provision, therefore, a simple ambiguity in language is insufficient

to hold the Tribe or its arms liable.

## II. LCO-CHC Is an Arm of The Tribe

Alternatively, plaintiff argues that even if the Tribe could assert sovereign immunity,

that immunity does not extend to a medical center connected to the Tribe.  This secondary

question turns on whether LCO-CHC is an "arm of the tribe" sufficient for the Tribe to

confer sovereign immunity upon it.  *See Cook v. AVI Casino Enters., Inc.*, 548 F.3d 718, 725

(9th Cir. 2008) ("[t]ribal corporations acting as an arm of the tribe enjoy the same

sovereign immunity granted to a tribe itself.")

As a threshold matter, the Tribe has provided LCO-CHC's governance documents

for the court's consideration, while plaintiff argues that:  these documents cannot be

considered at the motion to dismiss stage; or at the very least, the court must convert this

motion to dismiss one for summary judgment before considering those documents.  (Pl.'s

Opp. (dkt. #25) 9.)  However, that argument is unsupported by the law.  First, Seventh

Circuit case law states that when deciding Rule 12(b)(6) motions, the court "may consider

plaintiffs' complaints, documents referenced in the complaints, documents critical to the

complaints, and information subject to judicial notice." *Bruguier v. Lac du Flambeau Band of Lake Superior Chippewa Indians*, 237 F.Supp.3d 867, 870 (W.D. Wis. 2017) (citing *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012));  *see also Menominee Indian Tribe of Wisconsin v. Thompson*, 161 F.3d 449, 456 (7th Cir. 1998) (finding that treaties central to the Menominee's claims were not "outside the pleadings").  Second, Federal Rule of Civil Procedure 10(c) also states that "a copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."  While courts, including those in the Seventh Circuit, have narrowed this exception to documents "referred to in plaintiff's complaint" and "central to his claim," *McCready v. eBay, Inc.*, 453 F.3d 882, 891 (7th Cir.2006) (quoting *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir.2002)), a court may take judicial notice of documents in the public record without converting a motion to dismiss into a motion for summary judgment.  *Radaszewski v. Maram*, 383 F.3d 599, 600 (7th Cir. 2004).

Of particular relevance to the issue in dispute are Exhibits #5 and #6, which are represented to be public and direct excerpts from the Tribe's "Tribal Code of Law."  (Def.'s Br. (dkt. #22-5)) (Def.'s Br. (dkt. #22-6).)  While defendants attached other exhibits to their briefing, given the fact that these other documents were *not* considered for purposes of this opinion *and* are closer calls as to whether the court should consider them at the motion-to-dismiss stage, the court will only take judicial notice of Exhibits #5 and #6.  Specifically, Exhibit #5 contains the Tribal Court section of the Code and Exhibit #6 covers the Code's section devoted to the Tribe's Policies and Procedures.  (Def.'s Br. (dkt. #22-5).)

Accordingly, both of these documents are not only central to plaintiff's claim, but go directly to whether the LCO-CHC is an arm of the Tribe. Indeed, plaintiff herself alleges that, "[d]uring the times relevant to this complaint including 2017 and 2018, LCO-CHC acted *de facto* as a business entity independent of the LCO Tribe." (Am. Compl. (dkt. #19) ¶ 14.) The Tribe's governing documents are entirely relevant to that claim. Regardless, the governing documents are a matter of public record, allowing the court to consider Exhibits #5 and #6 without converting defendants' motion to dismiss to one for summary judgment.

The Seventh Circuit has not directly dealt with what constitutes an "arm of a federally-recognized, Native American tribe," but case law from other circuits are once again instructive. Determining whether an entity is an arm of the tribe requires examining factors such as: "(1) the method of creation of the economic entities; (2) their purpose; (3) their structure, ownership, and management, including the amount of control the tribe has over the entities; (4) the tribe's intent with respect to the sharing of its sovereign immunity; and (5) the financial relationship between the tribe and the entities." *White v. Univ. of California*, 765 F.3d 1010 (9th Cir. 2014) (quoting *Breakthrough Mgmt. Grp., Inc. v. Chukchansi Gold Casino and Resort*, 629 F.3d 1173, 1187 (10th Cir. 2010)). Applying these factors, the Ninth Circuit found a business to be a tribal arm where "the Tribe created [the business] pursuant to a tribal ordinance and intergovernmental agreement, and the tribal corporation is wholly owned and managed by the Tribe." *Cook v. AVI Casino Enterprises, Inc.*, 548 F.3d 718, 726 (9th Cir. 2008).

9

Here, plaintiff attempts to put distance between LCO-CHC and the Tribe by arguing that its day-to-day management, including the decision to fire her, and even the allegedly false billing practices, were controlled by LCO-CHC management, not by the Tribe. (Am. Compl. (dkt. #19) ¶ 15-23.) Comparing the Lac Courte Oreilles Tribal Code of Law against the relevant *White* factors, however, leads to a different legal conclusion:

1) The LCO-CHC was organized through the Tribal Code of Law, which sets out LCO-CHC hiring, HR and management practices, among other things. Title XIV, Chapter 5.

2) The express purpose of LCO-CHC is to "provide confidential quality family orientated healthcare in an environment that is respectful and fosters innovation utilizing available resource to maximize services to improve the overall health of the Tribal community." Title XIV, Section § 5.104

3) Under the Tribal Code of Law, the Health Director, who at the time of the incident was Jacqualyn Bae, is "responsible for the planning, organization, and administration of all tribal health services and shall oversee all matters relating to program requirements including daily operations of the LCO-CHC." Title XIV, Section § 5.305. The Health Director also reports directly to the Tribal Governing Board. *Id*. Similarly, regarding hiring, "[t]he Health Director will notify the Tribal Governing Board who was hired for what position(s) and/or if a position(s) was reposted." Title XIV, Section § 5.411.

4) While plaintiff argues that Bae simply served in a "figurehead capacity," Bae personally signed her termination letter. (Am. Compl. (dkt. #19) ¶ 20-23.) In

fact, any termination was required to "be forwarded to the Health Director for final approval or denial." Title XIV, Section § 5.1203(1)(d)(I).[3]

5) The Tribe intended to confer sovereign immunity upon the LCO-CHC under "Title II, Chapter 5 of the LCOTCL – Sovereign Immunity Code," which states that "immunity from suit means that no private lawsuit can be maintained against the Tribe or any of its subordinate entities *such as the LCO-CHC*, unless the Tribe consents to the action" Title XIV § 5.302 (emphasis added).

6) Finally, the financial ties between LCO-CHC and the Tribe are unclear from the materials before the court -- aside from the fact that Bae, who reported to the Tribal Governing Board, was in charge of ensuring the hospital remained in budget and liaising with the Tribal Accounting Department. Title XIV § 5.305. However, plaintiff represents that, "the LCO's budget, although it did include some funding from the LCO Tribe, was largely federal government funded through grants and reimbursements from Medicare and Medicaid programs." (Am. Compl. (dkt. #19) ¶ 20-23.) As such, this factor does not weigh for or against finding the LCO-CHC to be an arm of the tribe.

Of the five factors assessed above, four strongly point to the LCO-CHC being an arm of the Tribe, while only the fifth factor -- financial ties between the Tribe and clinic -- remain ambiguous. Moreover, the documents confirm a deep, long-term relationship

---

[3] Plaintiff also claims that Medical Director Starr was actually the one who fired her, but even if this were true (at least directly), Starr was required by the Tribal Code to "report to the Health Director [Bae] on all matters regarding patient care and the supervision of medical personnel." Title XIV, Section § 5.306.

between LCO-CHC and the Tribe.  Of particular note is the fact that even the LCO-CHC personnel policies are set forth in the Tribal Code of Law, and the Tribe's stated intent is for LCO-CHC to have sovereign immunity.  Finally, like the Tenth Circuit in *Breakthrough Mgmt.*, this court also finds the Tribe's "own descriptions of the [entity] to be significant." 629 F.3d at 1191–92.  Given all of these factors, the LCO-CHC has established itself as an arm of the Tribe, and as such, it is covered by the Tribe's sovereign immunity.

Whether employees, too, are covered by the LCO-CHC's sovereign immunity is a more difficult question.  Mestek sued defendants Taylor, Bae, Starr, Klecan, and Franz in both their official and individual capacities.  (Am. Compl. (dkt. #19).)  For tribal employees acting in their official capacity, "the relief sought is only nominally against the official and in fact is against the official's office and thus the sovereign itself."  *Lewis v. Clarke*, 137 S. Ct. 1285, 1291 (2017).  However, the Supreme Court has noted that, for personal capacity suits, "the real party in interest is the individual, not the sovereign."  *Id.* Under this holding, individual defendants may assert sovereign immunity in their official capacity as employees of LCO-CHC, but not their personal capacities.

Since the Supreme Court decided *Lewis*, however, federal circuit courts have held that the distinction between official and personal capacity should not be resolved simply on the fact that the caption of the case identifies defendants in their personal capacity. "Such a misinterpretation collapses the distinction between genuine and nominal personal-capacity suits and, rather conveniently for [plaintiff's] case, begs the question at issue in favor of the very formalism that the Court's well-established jurisprudence has long disavowed."  *Cunningham v. Lester*, 990 F.3d 361, 366–67 (4th Cir. 2021).  The Seventh

Circuit took a similar approach in finding that sovereign immunity applied to tribal police officers even though the plaintiff sued the individual officers in their personal capacities. *Genskow v. Prevost*, 825 F. App'x 388, 391 (7th Cir. 2020). This is because the tribe was "the real party in interest," and the claims against the officers were "essentially a claim against the tribe and therefore barred by its sovereign immunity." *Id*.

To determine whether the Tribe or its arm, the LCO-CHC, is the true party in interest, therefore, courts must look for the party "against whom the judgment would operate and on whom its burden would fall." *Cunningham v. Lester*, 990 F.3d 361, 367 (4th Cir. 2021). Here, defendants argue that plaintiff's requested relief is actually against the LCO-CHC, not the individual defendants. (Def.'s Op. Br. (dkt. #22) 13.) Specifically, plaintiff Mestek's amended complaint requests front pay, back pay, damages, reinstatement, and injunctive relief prohibiting defendants from blacklisting or retaliating against her. (Am. Compl. (dkt. #19) ¶ 168.) Besides other unspecified damages, therefore, Mestek is seeking relief that would have to come from LCO-CHC, putting the burden of any judgment on the Tribe's health center and suggesting it is the true party at interest.

The allegations in plaintiff's amended complaint also make plain that her claims for relief from the individual defendants are all essentially claims against LCO-CHC, as she consistently refers to the individual defendants granting relief in their official capacities. For instance, Mestek's "claim seeks injunctive relief against LCO CHC, including all applicable equitable remedies, *through its officials*, Defendants Taylor, Starr, Bae, Franz, and Klecan." (Am. Compl. (dkt. #19) ¶ 171) (emphasis added).) Additionally, plaintiff alleges that "LCO CHC, *acting through Defendants* Taylor, Starr, Bae, and Klecan in their capacity

13

as LCO CHC officials, intentionally interfered with Ms. Mestek's LCO CHC's employment." (Am. Compl. (dkt. #19) ¶ 175) (emphasis added). These allegations readily distinguish Mesteck's claims for relief from *Lewis*, which The Supreme Court explained was "simply a suit against Clarke to recover for his personal actions," and "will not require action by the sovereign or disturb the sovereign's property." 137 S. Ct. at 1291 (quoting *Larson v. Domestic and Foreign Commerce Corp.*, 337 U.S. 682, 687 (1949)).

Finally, plaintiff herself makes no argument on the matter of sovereign immunity for individual employees, giving defendants the sole word on this issue. This is hardly surprising since not only is the relief sought against all of the individual employees of LCO-CHC sought in their capacity as employees of an arm of the Tribe, but all of their alleged *actions* also fall easily within the scope of their employment. Given the unambiguous pleadings in the amended complaint, the relevant caselaw and the briefing provided by the parties, Mestek may have *formalistically* sued Taylor, Bae, Starr, Klecan, and Franz in both their individual and official capacities, but her claims and requested relief establish that the real party in interest is LCO-CHC, an arm of the Tribe. Thus, defendants Taylor, Bae, Starr, Klecan, and Franz are entitled to assert the LCO-CHC's sovereign immunity.

This just leaves the last individual defendant standing: Popp, who is an independent contractor and sued solely sued in his personal capacity. However, plaintiff only alleges a Wisconsin state law claim against him. (Am. Compl. (dkt. #19) ¶ 177.) While the court could exercise supplemental jurisdiction over this remaining state law claim, there is a presumption against doing so when all federal claims have been dismissed. *Al's Serv. Ctr. v. BP Prod. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("[w]hen all federal claims in

14

a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims"). Accordingly, plaintiff may not proceed against any of the defendants under the FCA, and this court loses its jurisdiction over those federal claims, as well as plaintiff's supplemental state law claims.

ORDER

IT IS ORDERED that defendants' motion to dismiss for failure to state a claim and lack of subject-matter jurisdiction (dkt. #21) is GRANTED. Plaintiff's complaint is DISMISSED WITHOUT PREJUDICE.

Entered this 17th day of May, 2022.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

15